

-FILED-

AUG 18 2021

At _____ M
GARY T. BELL, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Case No. 2:21-CR- 105 |
| v. ) | |
| ) | 18 U.S.C. § 2 |
| RICKY BLAYLOCK and ) | 18 U.S.C. § 1344 (1) |
| JACQUELINE BLAYLOCK WISNEWSKI ) | 18 U.S.C. § 1344 (2) |

**INDICTMENT**
(Bank Fraud)

**THE GRAND JURY CHARGES:**

1. From about March 2008 and continuing through 2011, in the Northern District of Indiana and elsewhere,

**RICKY BLAYLOCK and
JACQUELINE BLAYLOCK WISNEWSKI,**

defendants herein, knowingly executed a scheme to defraud Standard Bank, a financial institution whose deposits were then insured by the Federal Deposit Insurance Corporation, and to obtain approximately $100,000 under the custody or control of Standard Bank by false and fraudulent pretenses, representations, and promises.

## Background

At all times material to this indictment:

2. Jacob Raymon Blaylock, an active-duty Army Reserve soldier, died on December 9, 2007, in Houston, Texas.

3. The sole beneficiary of Jacob Blaylock's estate was his eight-year-old Daughter LJ to whom he willed the entirety of a $400,000 life insurance Policy. The money was to be held in trust for LJ's benefit until she reached age twenty-one.

4. The will identified Blaylock's father, defendant RICKY BLAYLOCK, as the executor of the trust and his mother, defendant JACQUELINE BLAYLOCK WISNEWSKI, as the trustee. LJ lived in Texas with her maternal grandmother and guardian AL.

## Scheme to Defraud

5. In March 2008 defendant RICKY BLAYLOCK opened a Chase Business Classic checking account, ***031, titled "Jacob Raymon Blaylock Testamentary Trust" at a Chase Bank in Lowell, Indiana.

6. On or about March 7, 2008, $403,131,.74, the payout from Jacob Blaylock's life insurance policy was deposited into Chase checking account, ***031.

2

7. On March 17, 2008, defendant JACQUELINE BLAYLOCK WISNEWSKI opened a Trust Savings Account ***105, designated for the benefit of LJ, at Standard Bank in Lowell, Indiana and identified herself as trustee on the account.

8. On March 17, 2008, defendant JACQUELINE BLAYLOCK WISNEWSKI opened a trust checking account, also designated for the benefit of LJ at Standard Bank in Lowell, Indiana, account ***005, with a $50,000 deposit.

9. On or about March 17, 2008, defendant RICKY BLAYLOCK issued a check from the Chase checking account, ***031 to defendant JACQUELINE BLAYLOCK WISNEWSKI in the amount of $100,000, which defendant JACQUELINE BLAYLOCK WISENEWSKI deposited into Standard Bank Savings Account ***105.

10. On or about April 21, 2008, defendant RICKY BLAYLOCK'S name was added to Standard Bank Trust Accounts ***105 and ***005 as a trustee and authorized signer.

11. On or about September 4, 2008, defendants RICKY BLAYLOCK and JACQUELINE BLAYLOCK WISNEWSKI caused an additional $30,000 to be deposited into Trust Savings Account ***105, raising the balance in the trust account to $130,283.52. The balance for Trust Savings Account ***105

remained slightly over $130,000 up until March 17, 2010, when defendants began removing money.

12. Beginning March 17, 2010 and continuing through December 2011, Defendants RICKY BLAYLOCK and JACQUELINE BLAYLOCK WISNEWSKI withdrew money from Standard Bank Trust Savings Account ***105 reducing the balance in the account to less than $70 by December 30, 2011.

13. Beginning March 17, 2010 and continuing through November 2011, Defendants RICKY BLAYLOCK and JACQUELINE BLAYLOCK WISNEWSKI deposited the money they withdrew from Standard Bank Trust Savings Account ***105, into Standard Bank Trust checking account ***005.

14. Money deposited into Standard Bank Trust Checking Account ***005 from Trust Savings Account ***105 was typically removed from the account by the defendants through frequent ATM withdrawals in approximately $400-$500 increments at ATMs located in Northwest Indiana and the Indianapolis area. On three occasions, however, defendant JACQUELINE BLAYLOCK WISNEWSKI wrote out checks, one $5,000 check (12/29/10) payable to herself as "retainer fees" and two $5,0000 checks (2/22/2011 and 3/1/2011) payable to cash for "trust business". Defendant JACQUELINE BLAYLOCK WISNEWSKI endorsed all three checks.

15. Defendant JACQUELINE BLAYLOCK WISNEWSKI also wrote out several checks on the Standard Trust Checking Account \*\*\*005 in 2011 payable to and endorsed by defendant RICKY BLAYLOCK.

16. By December 2011, Standard Bank Trust checking account \*\*\*005 held a Balance of less than fifty dollars.

17. From 2008 through December 2011 no disbursements were made from either Standard Bank Trust Savings Account \*\*\*105 or Standard Bank Trust Checking Account \*\*\*005 to or on behalf of the trust beneficiary LJ.

## Execution of the Scheme to Defraud

18. On or about the date listed below, in the Northern District of Indiana, and elsewhere,

**RICKY BLAYLOCK and
JACQUELINE BLAYLOCK WISNEWSKI,**

defendants herein, for the purpose of executing and attempting to execute the above described scheme to defraud Standard Bank, and to obtain money and funds under the custody and control of Standard Bank, an FDIC insured banking institution, by means of false and fraudulent pretenses, did knowingly cause a check drawn on the Trust Checking Account \*\*\*005 designated for the benefit of LJ, numbered and in the amount set forth below, to be submitted to and to clear Standard Bank when they knew full well they were not entitled to those trust funds.

5

| Transaction | Date |
|---|---|
| Check 213, Acc ***005 Payable to Ricky Blaylock in the amount of $500 bearing notation: Estate Business | November 29, 2011 |

All in violation of Title 18, United States Code, Sections 2 and 1344(1)

and (2).

## FORFEITURE ALLEGATIONS

1. All allegations contained in this indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(2)(A).

2. Upon conviction of the offense in violation of Title 18, United States Code, Section 1344, set forth in this indictment, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation.

3. The property to be forfeited includes proceeds received for defendants' participation in the alleged scheme. The property to be forfeited includes, but is not limited to, a money judgment representing the amount of proceeds obtained as a result of the offense charged in this Indictment and all relevant conduct.

4. If any of the property described above, as a result of any act or omission of the defendant:

      a. cannot be located upon exercise of due diligence;
      b. has been transferred or sold to, or deposited with a third party;
      c. has been placed beyond the jurisdiction of the court;
      d. has been substantially diminished in value; or
      e. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. §982(a)(2)(A) and 28 U.S.C. §2461(c).

A TRUE BILL:

/s/ Foreperson
FOREPERSON


TINA L. NOMMAY
ACTING UNITED STATES ATTORNEY


By: /s/ Diane L. Berkowitz
Diane L. Berkowitz
Assistant United States Attorney