UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 2:21-CR-105-PPS-JEM |
| v. | ) |
| | ) |
| RICKY BLAYLOCK, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Defendant Ricky Blaylock is charged with one count of bank fraud, and he now seeks dismissal of the Indictment. [DE 54.] He argues the government made multiple errors made during the grand jury proceedings, including presenting false testimony. Because he has not established that he has been prejudiced by the alleged errors, if they exist at all, his motion will be DENIED.

## BACKGROUND

On August 18, 2021, the grand jury charged Ricky Blaylock and Jacqueline Blaylock Wisniewski (his ex-wife) with one count of bank fraud under 18 U.S.C. § 1344, and aiding and abetting under 18 U.S.C. § 2. [DE 1.] In particular, the Indictment alleges that in 2007 the defendants' son died while serving in the military and he left a $400,000 estate mostly comprised of proceeds from a life insurance policy. Under the son's Will, all the money was to go to his daughter, who was a minor child at the time. The decedent also appointed his parents, the defendants in this case, as executors of the estate and they were to hold the funds in trust for their granddaughter until she

1

reached the age of majority. Instead, according to the Indictment, over a period of several years, they stole a substantial portion of the money and used it for their own benefit. Three bank accounts were integral to the scheme—one at Chase Bank (a checking account) and two at Standard Bank (a checking account and savings account). [DE 1 at 2-3.] Blaylock tells me in his present motion that there were other accounts involved in the transactions (accounts at Fifth Third for example), [DE 54 at 3], but the three I just identified are the only ones mentioned in the Indictment.

Blaylock contends that one government witness made multiple false or misleading statements to the grand jury which prejudiced him. The witness in question is FBI Agent Derrick Poppelriter who led the investigation. [DE 54.] Specifically, Blaylock argues that the FBI Agent mischaracterized (1) the type and use of the Chase account; (2) how the Standard Bank accounts were titled, i.e. whether they were set up for the benefit of decedent's daughter; (3) that $250,000 of the decedent's life insurance proceeds were unaccounted for; and (4) Blaylock's involvement in the depositing of certain checks into Standard Bank accounts. [DE 54 at 3.]

For its part, the government tells me that the FBI Agent didn't provide false statements at all, and if he was mistaken about a few points (as opposed to lying about something) there has been no demonstration of prejudice by Blaylock. [DE 63.] The government contends that the grand jury had sufficient evidence to find probable cause that Blaylock committed the charged crime, including evidence from multiple government witnesses in addition to the FBI Agent. The grand jury heard from the

granddaughter (i.e. the alleged victim), her guardian (the maternal grandmother), and Blaylock's attorney during prior litigation in a Texas probate court. [DE 63.]

## DISCUSSION

Grand juries serve as an important barrier between the accused and the government. Before a felony indictment is returned against anyone, the government must demonstrate to a grand jury that there is probable cause to believe that a crime has been committed and that the accused committed it. *Kaley v. United States*, 571 U.S. 320, 328 (2014); *Beavers v. Henkel*, 194 U.S. 73, 84 (1904). The indictment must inform the accused of the nature and cause of the accusation. *Russell v. United States*, 369 U.S. 749, 760-61 (1962).

A district court may "dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions.'" *United States v. Williams*, 504 U.S. 36, 46 (1992) (quoting *United States v Mechanik*, 475 U.S. 66, 74 (1986) (O'Connor, J., concurring)). "[A] district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1998). "Prejudice occurs if a 'violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence' of the violation." *United States v. Anderson*, 61 F.3d 1290, 1296 (7th Cir. 1995) (quoting *Bank of Nova Scotia*, 487 U.S. at 256).

Much of Blaylock's motion relies on documents he received in discovery. Perhaps there is more to the story, as Blaylock suggests.  But the government has no duty to present the full story to the grand jury. Indeed, it doesn't even have to present exculpatory evidence to a grand jury. *Williamson*, 504 U.S. at 51-53. Instead, all the government had to do was convince the grand jury that there is probable cause to believe that Blaylock committed a bank fraud.  They readily did that by providing evidence that the victim (the defendant's granddaughter) was the intended recipient of the $400,000, that the defendants had control over those funds, that the money was essentially stolen from her by the defendants, and that an FDIC insured bank was integral to the scheme. They provided this evidence to the grand jury even if one sets aside the allegedly false testimony of Agent Poppelriter. For example, the grand jury heard testimony from a slew of witnesses including the victim (the decedent's child), her guardian (the maternal grandmother), as well as Blaylock's civil attorney during the Texas probate litigation. The grand jury learned that, through the Texas litigation, Blaylock and Wisniewski were supposed to send quarterly reports to the guardian to verify that the funds from the estate were properly being preserved. Instead, there was evidence that they sent falsified reports to lull the victim into believing the funds were safe when the defendants well knew they were not.  Therefore, in the face of this evidence, it would be difficult to conclude that there is prejudice to Blaylock even if the agent's statements could be shown to be false.

What's more, Blaylock provides no evidence that the FBI Agent intentionally misstated or mischaracterized any of this testimony to the grand jury. It is a tall order to

show how the statements pointed to by Blaylock rise to the level of perjury as opposed to unintentional misstatements. Indeed, I see no evidence that the any of the discrepancies were anything more than that – simple misstatements (if they are that at all).

As noted above, the first alleged misstatement regards the Chase account. Here's what Agent Poppelriter testified to about that: "So Jackie and Ricky both placed – they placed $400,000 into a Chase business account in Indiana . . . From there, Ricky and Jackie took money out of the Chase Account." *Id.* at 2. Blaylock's principal point is the agent lumped the two defendants together. But I fail to see how the statement is false especially, as pointed out by the government, when you remove the ellipses and read the statement in its entirety. [DE 63 at 5.]  Perhaps Wisniewski did some things and Blaylock did others to help execute the scheme. But, in any event, the fact that they were married during much of the scheme makes it a fair inference that they were acting in concert with one another.

Blaylock next argues that the FBI Agent misinformed the grand jury that both the Standard Bank checking and savings accounts were trust accounts set up for the benefit of the decedent's daughter. [DE 54 at 4.] Blaylock appears to argue that the accounts were not in fact titled for the benefit of the decedent's daughter. Instead, they were titled in Wisniewski's name as the trustee for the decedent. According to Blaylock, the FBI Agent had full knowledge of this from the previous litigation in Texas. As noted above, in that earlier litigation, the granddaughter's guardian (the maternal grandmother), entered into a settlement agreement with the defendants requiring the

5

defendants to make quarterly reports of the trust, and the FBI Agent therefore knew full well that the trust was not set up in the daughter's name.

This strikes me as much ado about nothing. I fail to see how the alleged misstatement, whether the Standard Bank accounts were titled specifically for the benefit of the decedent's daughter, is material. The bottom line is that the type of account that was set up with Standard Bank was for the purpose of administering the decedent's estate and carrying out his wishes—to ensure his daughter would be cared for if he passed. According to the Indictment, the decedent's Will clearly indicated that his daughter would be the sole beneficiary of the $400,000 life insurance proceeds. So, whether a bank account holding those funds was formally designated "for the benefit" of the daughter, does not strike me as mattering a whole lot. As long as the money was secure in an account somewhere is what matters; not the moniker attached to the account. Blaylock has not shown how the grand jury was substantially prejudiced by this misstatement.

Finally, Blaylock points to a third entry of inaccurate testimony where the FBI Agent testified that $250,000 were unaccounted for and repeated this misstatement when asked a follow-up question by a grand juror. The grand juror asked, "As of today, you still haven't found the other $250,00 [sic] you[] say?" the FBI Agent responded, "To this day sir, we do not have a record of the other $250,00 [sic]." Blaylock argues that the FBI Agent knew the balances of the various accounts and received information about the other $250,000. Blaylock argues that this statement clearly shows that the juror expressed sincere doubt as to Blaylock's involvement with the alleged fraud. I fail to see

6

how. The question strikes me as nothing more than a neutral question concerning the current status of the investigation. First, as the government points out, whether the $250,000 was recovered or accounted for is immaterial to the determination of whether probable cause existed to find that Blaylock committed the crime of bank fraud. Recall that the one count Indictment involves a check written out of the Standard Bank account. And while the FBI Agent did have some records from Wisniewski showing the disposition of the $250,000, he had not yet verified their accuracy. So, it was perfectly permissible for him to have said the money was not accounted for *at that time.* Perhaps the FBI Agent could have provided a more fulsome response and explanation to the grand juror's question, but I do not believe it was a false statement at the time it was made.

In sum, Blaylock must show that the alleged violations substantially influenced the grand jury's decision to indict. In other words, he needs proof that he was prejudiced by the false testimony. However, after reviewing the grand jury testimony, the statements that Blaylock points to are mostly collateral to the principal issue the grand jury had to decide: whether there was probable cause that the defendants executed a scheme to defraud involving Standard Bank. There was plenty of proof that he did. In other words, Blaylock has failed to show misconduct before the grand jury that amounts to a "'violation that substantially influenced the grand jury's decision to indict, or if there is a grave doubt that the decision to indict was free from the substantial influence' of the violation." *Anderson*, 61 F.3d at 1296 (quoting *Bank of Nova Scotia*, 487 U.S. at 256); *Mechanik*, 475 U.S. at 78.

7

## CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss Indictment [DE 54] is **DENIED**.

**SO ORDERED**.

ENTERED: February 1, 2022.

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
